IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 27, 2012 Session

## RICK EARL, ET AL. v. DR. RAQUEL HATTER[1], COMMISSIONER, TENNESSEE DEPARTMENT OF HUMAN SERVICES, ET AL.

Appeal from the Chancery Court for Davidson County
No. 101213III     Ellen H. Lyle, Chancellor

No. M2011-00914-COA-R3-CV - Filed November 19, 2012

Married couple sought judicial review of decision of Department of Human Services holding that they were not eligible for medicaid under an amendment to the Social Security Act known as the "Pickle Amendment." Upon consideration of the record we affirm the judgment of the Chancery Court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR. and ANDY D. BENNETT, JJ., joined.

Lenny L. Croce, Oak Ridge, Tennessee, for the Appellants, Rick Earl and Wanda Earl.

Robert E. Cooper, Jr., Attorney General and Reporter; Carolyn E. Reed, Assistant Attorney General, for the State of Tennessee.

### OPINION

This case involves the interpretation and application of an amendment to the Social Security Act commonly known as the Pickle Amendment, which is codified at 42 U.S.C. § 1396(a) and made a regulation at 42 C.F.R. 435.135; it has been adopted in Tennessee at Tenn. Comp. R. & Regs. 1240-03-02-.02(2)(m). Specifically, we are asked to determine

---

[1] This case originally named then-Commissioner, Virginia T. Lodge, as defendant. Present Commissioner, Dr. Raquel Hatter, has been substituted in accordance with Rule 19(c), Tenn. R. App. P. 19(c).

whether, by application of the Pickle Amendment, either Rick Earl or Wanda Earl or both, are eligible for Medicaid.[2]

On October 8, 2009, the Department of Human Services ("the Department") sent Mr. Rick Earl and Mrs. Wanda Earl ("the Earls") notice that their Medicaid coverage would terminate. On October 23, 2009, the Earls appealed the termination of their coverage. Their benefits were continued pending the outcome of the appeal. Administrative hearings were held on February 18, 2010 and April 1, 2010.

The proof at the hearing was that Mrs. Earl was deemed disabled in 1994 and became eligible for and received Supplemental Security Income ("SSI").[3] Her receipt of SSI ended in 2002 when she became entitled to and received Old Age, Survivors, and Disability Insurance ("OASDI").[4] Mrs. Earl's OASDI benefits ended in 2008 when her youngest child attained the age of 16. At the time of the administrative hearing, Mrs. Earl was not receiving SSI or OASDI benefits; she had no income. Mr. Earl was deemed disabled in 2001, and became eligible for both OASDI and SSI benefits. Mr. Earl received SSI until October 2002. At the time of the administrative hearing, Mr. Earl received OASDI benefits of $1,070 per month.

On May 19, 2010, the DHS hearing officer issued an Initial Order affirming the termination of Mr. and Mrs. Earl's Medicaid eligibility. The initial Order became final on June 3, 2010, and on July 25, the Earls filed a Complaint and Petition for Judicial Review 2010 in the chancery court.

In the chancery court action, the Earls argued they were eligible for Medicaid benefits as a couple in accordance with the "Pickle Amendment." The trial court reviewed the administrative record and issued an opinion and order on March 22, 2011 in which it made findings of fact and held:

---

[2] Medicaid is a federal program that reimburses states for providing medical care to those who cannot afford it. *See* 42 U.S.C.A. § 1396.

[3] Supplemental Security Income (SSI) is a federal income supplement program designed to help the aged, blind, and disabled people; those who qualify for SSI are eligible for Medicaid. *See* 42 U.S.C. § 1381 *et seq.*

[4] Old Age Survivors and Disability Insurance is a program established under Title II of the Social Security Act; in order to receive OASDI benefits, one must have a work history or be the dependent of a worker. *See, e.g.* 42 U.S.C. §402. Ms. Earl was entitled to received OASDI as dependent of Mr. Earl because she did not have a work history and was the mother of the parties' minor child.

Applying to these facts of record the essential elements of the federal Pickle Amendment set out above, the Court concludes that Mr. Earl is eligible for Pickle amendment consideration because (1) he is a current recipient of OASDI, (2) he did have SSI and OASDI at one point since April 1977 for at least one month, and (3) he has received COLA increases. Mrs. Earl, however, is not eligible for Pickle Amendment/Medicaid eligibility because (1) she is not receiving OASDI. The only Social Security related benefit she has received since losing SSI (due to household income) was mother's benefits on behalf of her children, which ended February 2008.

The significance of the foregoing analysis of Mr. Earl as the "eligible" spouse and Mrs. Earl as the "ineligible" spouse is that it is the premise for determining whether the Petitioners' countable income is analyzed for Pickle Amendment/Medicaid eligibility under the individual benefit rate or the couple benefit rate.

The court continued its analysis by examining the formulas for determining the Earl's household income and determined that their income, as calculated under the regulations, exceeded the individual benefit rate and disqualified them from Medicaid eligibility.

The court also considered the Earl's argument that the requirements for Medicaid eligibility under the Pickle amendment in Tennessee's regulation differed from the federal regulation. The court noted that the Tennessee regulation does not "reproduce the Pickle Amendment provisions verbatim, but the Tennessee regulation does reference them with the statement '(Commonly known as the Pickle Amendment.)'" and concluded that the Tennessee regulations "incorporate[] by reference the explicit terms of the Pickle Amendment, including its requirement that eligibility depends upon receipt of OASDI benefits." The court affirmed the DHS' ruling and held that the Earls do not qualify for Medicaid. The Earls appeal.

## II. Standard of Review

Judicial review of decisions of an administrative agency is governed by the narrow, statutorily defined standard at Tenn. Code Ann. § 4-5-322(h) rather than the broad standard of review used in other civil appeals. *Willamette Indus., Inc. v. Tennessee Assessment Appeals Comm'n*, 11 S.W.3d 142, 147 (Tenn. Ct. App. 1999) (citing *Wayne Cnty v. Tennessee Solid Waste Disposal Control Bd.*, 756 S.W.2d 274, 279-80 (Tenn. Ct. App. 1998)). Specifically, Tenn. Code Ann. §4-5-322(h) provides that this court may reverse or modify the decision of the agency only if the petitioner's rights have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

(1) In violation of constitutional or statutory provisions;

(2) In excess of the statutory authority of the agency;

(3) Made upon unlawful procedure;

(4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

(5)(A) Unsupported by evidence that is both substantial and material in the light of the entire record.

Tenn. Code Ann. § 4-5-322(h)(1)-(5)(A). We will generally defer to the decision of an administrative agency when it is acting within its area of specialized knowledge, experience and expertise. *Wayne County v. Tennessee Solid Waster Disposal Control Board,* 756 S.W.2d 274,279 (Tenn. Ct. App. 1988).

## III. Discussion

As noted by DHS in its brief, the issue presented is "whether DHS correctly interpreted and applied the Pickle Amendment to the facts when it determined that the Earls are not eligible for medicaid coverage." After careful study of the administrative record and the parties' briefs, we are persuaded that the decision of the trial court should be affirmed. Moreover, because we find that the opinion of the trial court adequately states the facts and the law on the issues presented in this appeal, we adopt the opinion as the opinion of this Court and include it as an appendix to this opinion.

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
RICHARD H. DINKINS, JUDGE

# IN THE CHANCERY COURT FOR THE STATE OF TENNESSEE
## TWENTIETH JUDICIAL DISTRICT, DAVIDSON COUNTY, PART III

| | |
|---|---|
| RICK EARL and WANDA EARL, | ) |
| | ) |
| Petitioners, | ) |
| | ) |
| VS. | ) NO. 10-1213-III |
| | ) |
| VIRGINIA T. LODGE, Commissioner, | ) |
| Tennessee Department of Human | ) |
| Services, | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM AND ORDER

This lawsuit is a petition filed by a married couple for judicial review of a May 19, 2010 Final Order[1] of the Tennessee Department of Human Services ("DHS") that the Petitioners are not eligible to receive Medicaid because their countable income exceeds the limit set by federal law.

Seeking to overturn that determination, the Petitioners unsuccessfully claimed in the contested case hearing below that DHS used the incorrect limit on household income (the "benefit rate") in determining the Petitioners' Medicaid eligibility. Citing to 20 C.F.R. 416.1163(3)(d)(1), DHS applied the benefit rate for an individual. Its analysis of applicable law was that Mrs. Earl is considered an ineligible spouse. The consequence of that

---

[1]Because the initial order was not acted upon by the Department within 15 days, it became a Final Order under Tennessee Code Annotated section 4-5-314.

determination is that Mrs. Earl's $0 income requires that the couple's household countable income be analyzed according to the rate for an individual and that the Petitioners can not claim the higher limit for couples with income. This analysis causes the Petitioners to be disqualified for Medicaid. The Petitioners' argument below was that under Tennessee's version of the Pickle Amendment (TENN. COMP. R. & REGS. 1240-03-2-.02(2)(m)) the correct benefit rate to apply to their case is the rate for a disabled couple, not an individual. When the higher couple rate is used, the Petitioners' countable income does not exceed the benefit rate, and they are eligible for Medicaid. On this petition for judicial review, the Petitioners renew that argument.

After considering the record, argument of counsel and the law, the Court concludes that DHS' construction of the applicable law is correct. The facts and conclusions of law on which the Court bases its decision are as follows.

This case stems from the January 8, 2009 decision of the United States District Court for the Middle District of Tennessee allowing the State of Tennessee to lift the previous "Daniels" injunction and reassess whether individuals are eligible to receive Medicaid in cases where their SSI cash benefits had been terminated sometime after November 1987. The Petitioners were in the group of persons reassessed and were determined by DHS not to be eligible to receive Medicaid because their $844.00 in countable income exceeded the benefit rate which DHS asserted was applicable. The Petitioners base their claim of

2

eligibility on the Pickle Amendment, a law enacted by Congress in 1986 to address inequities created by Cost of Living Adjustments to SSI.

Each party's attorney ably explains that the purpose of the Pickle Amendment is to address "inequities in SSI eligibility created when the Cost of Living Adjustments in payments for OASDI (Old Age, Survivors and Disability Income) cause income to exceed the income standard for SSI." The Amendment functions to "save Medicaid for those disqualified by COLAs from receiving SSI." *Lynch v. Dawson*, 820 F.2d 1014, 1018 (9th Cir. 1987). "Those affected by the [Pickle] amendment are persons who are disabled, blind or over 65 and whose income and resources are such that they would be eligible for SSI if the COLAs paid under Title II were deducted from their income." *Id.* at 1017. "Thus all persons whose incomes are above the SSI limit, and who would be below that limit but for COLA's in their countable income, constitute the class of persons to whom the amendment is addressed." *Id.* "The key determination is whether the individual would be eligible for SSI once the income 'received' by the individual and spouse 'attributable to' COLA's is disregarded." *Id.*

In this case it is undisputed that the Petitioners' present benefit status is that Mr. Earl receives OASDI benefits of $1,070.00 per month. This is the couple's only income. Moreover, all agree that to determine whether the Pickle Amendment applies is that a $20 disregard is subtracted from Mr. Earl's income of $1,070.00, leaving $1,050.00. From that,

3

$206.00 in a COLA is subtracted, leaving $844.00 of "countable income." The dispute is the applicable benefit rate.

The federal benefit rate for an individual to qualify for the Pickle Amendment is $674.00. Thus, the $844.00 countable income of the Petitioners exceeds the $674.00 and, using that rate, the Petitioners would not qualify for the Pickle Amendment. Yet, the federal benefit rate for a couple to qualify for the Pickle Amendment is $1,011.00. Thus, the $844.00 of Petitioners' countable income is less than the federal benefit rate for a couple and would qualify for application of the Pickle Amendment to receive Medicaid. The question presented by this Petition for Judicial Review, then, is which benefit rate—individual or couple—applies in this case.

At first glance, one would assume that because the Petitioners are a married couple and both disabled that the couple benefit rate would apply. A review of the applicable law, however, reveals that the inquiry is not so superficial. The analysis depends upon instructions and definitions provided in the various pertinent federal and state regulations.

Beginning with the text of the Pickle Amendment, codified at 42 U.S.C. 1996(a) and made a regulation in 42 C.F.R. 435.135, it provides as follows:

(a)　If an agency provides Medicaid to aged, blind or disabled individuals receiving SSI or State supplements, it must provide Medicaid to individuals who–

(1)　Are receiving OASDI;

4

(2)     were eligible for and receiving SSI or State supplements but because ineligible for those payments after April 1977; and

(3)     Would still be eligible for SSI or State supplements if the amount of OASDI cost-of-living increases paid under section 215(i) of the Act, after the last month after April 1977 for which those individuals were both eligible for and received SSI or a State supplement and were entitled to OASDI, were deducted from current OASDI benefits.

Thus, in order to qualify for Medicaid under the explicit terms of the federal Pickle Amendment the essential elements are (1) receipt of OASDI; (2) previous eligibility for SSI but ineligibility after April 1977; and (3) if OASDI COLAs are disregarded, the applicant would still be eligible for SSI.

Turning to the record, the undisputed benefits history of the Petitioners is that the Petitioners were recipients of SSI. Mrs. Earl began receiving SSI in 1994 and Mr. Earl in January of 2001. When Mr. Earl was approved for SSDI in September of 2002, his SSDI income caused the household income to be such that Mrs. Earl was then over income for SSI; however, since her youngest child was still under age 16, Mrs. Earl began receiving mother's benefits under OASDI. In 2008 Mr. Earl returned to work and worked until the end of May 2009. His SSA Title II disability benefits (SSDI) ended during that period. Mrs. Earl's mother's benefits ended in February 2008, when her youngest child attained age 16. In May 2009 Mr. Earl reapplied for Social Security Disability benefits and was approved as of June 2009. Thus, upon application for Medicaid on October 21, 2009, Mrs. Earl was not receiving any form of OASDI but had, since April 1977, received OASDI benefits and SSI in the same

5

month. Also, Mr. Earl was presently receiving OASDI benefits (SSDI) and had, since April 1977, received an OASDI benefits and SSI in the same month.

Applying to these facts of record the essential elements of the federal Pickle Amendment set out above, the Court concludes that Mr. Earl is eligible for Pickle Amendment consideration because (1) he is a current recipient of OASDI, (2) he did have SSI and OASDI at one point since April 1977 for at least one month, and (3) he has received COLA increases. Mrs. Earl, however, is not eligible for Pickle Amendment/Medicaid eligibility because (1) she is not receiving OASDI. The only Social Security related benefit she has received since losing SSI (due to household income) was mother's benefits on behalf of her children, which ended February 2008.

The significance of the foregoing analysis of Mr. Earl as the "eligible" spouse and Mrs. Earl as the "ineligible" spouse is that it is the premise for determining whether the Petitioners' countable income is analyzed for Pickle Amendment/Medicaid eligibility under the individual benefit rate or the couple benefit rate.

The federal regulations require use of 20 C.F.R. 416.1163 in determining income. That regulation provides the formulas for determining what is counted as household income. 20 C.F.R. 416.1163 speaks in terms of an "eligible spouse" and an "ineligible spouse." The first step, then, in applying the 20 C.F.R. 416.1163 formula is to determine whether the Petitioners are "eligible" or "ineligible" spouses. These terms are defined in 20 C.F.R. 416.120(5), (13), (14). "Couple" is defined in 20 CFR 416.120(5) as "an eligible individual

6

and his eligible spouse." Then, in subpart 13 "eligible individual" is defined as "an aged, blind or disabled individual who meets all the requirements for eligibility for benefits under the Supplemental Security Income program." "Ineligible spouse" is defined in subpart 14 as "aged, blind or disabled individual who is the husband or wife of another aged, blind or disabled individual who is living with that individual." "Eligible individual" requires that the person be both disabled, as are both Mr. and Mrs. Earl, but also meet all of the requirements for eligibility for benefits under the Supplement Security Income program, i.e. OASDI. "Ineligible spouse," on the other hand, requires that the spouse be disabled and be the husband or wife of another disabled individual who is living with the individual. There is no requirement that the "ineligible spouse" meet all the requirements for eligibility for benefits under the Supplement Security Income program as is required for the eligible individual. Thus, mirroring the analysis *supra* at 6, Mr. Earl is the "eligible spouse" for purposes of computing income under 20 C.F.R. 416.1163 because he receives OASDI, and Mrs. Earl is the ineligible spouse.

With these categories in place, the Court returns to the formula in 20 C.F.R. 416.1163, and sees that the next step, stated in subpart (3)(d)(1), is to determine the amount of the ineligible spouse's income. The purpose of this determination is that it will decide if income from the ineligible spouse has to be "deemed," i.e. attributed to the eligible spouse for purposes of calculating countable income.

7

With respect to the income of the ineligible spouse and deeming, subpart (3)(d)(1) provides that if the amount of the ineligible spouse's income, i.e. Mrs. Earl, is less than the difference between the federal benefit rate for an eligible couple ($1,011.00) and the federal benefit rate for an individual ($674.00),[2] there is no income to deem from the spouse, and only the federal benefit rate for an <u>individual</u> is used:

> (d) *Determining your eligibility for SSI.* (1) If the amount of your ineligible spouse's income that remains after appropriate allocations is not more than the difference between the Federal benefit rate for an eligible couple and the Federal benefit rate for an eligible individual, there is no income to deem to you from your spouse. In this situation, we subtract only your own countable income from the Federal benefit rate for an individual to determine whether you are eligible for SSI benefits.

After that determination is made, under subpart (3)(d)(1) the eligible spouse's countable income is subtracted from the benefit rate for an <u>individual</u> ($674.00) to determine eligibility for the Pickle Amendment.

Applying this formula, step by step, to this case, the Court starts with the income of the ineligible spouse. That is Mrs. Earl, and her income is $0. Returning to the method in subpart (3)(d)(1), the Court sees that her $0 income does not exceed the $337.00 threshold. The result is that Mrs. Earl does not have sufficient income to "deem" to the eligible spouse (Mr. Earl). If she did, the Petitioners would qualify for the couple benefit rate. Said another way, Mrs. Earl's $0 income results, under subpart (3)(d)(1), in the greater couple limit of $1,011.00 for household income not being applied. Instead, Mrs. Earl's absence of sufficient

---

[2] $1,011.00 - $674.00 = $337.00

8

income to deem means that the individual rate of $674.00 must be used as the benefit rate/limit for Petitioners' countable income. Proceeding with the formula, the Court, as noted *supra* at 3, looks to Mr. Earl's countable income of $844.00. Using that, the Court sees that the countable income of $844.00 exceeds the $674.00 individual benefit rate; so, the Petitioners' income exceeds and is disqualified for Pickle Amendment/Medicaid eligibility.

The Petitioners' challenge to the above analysis appears to rest on their construction of the Pickle Amendment as adopted in Tennessee in Tenn. Comp. R. & Regs. 1240-03-2-.02(2)(m):

> (2) Medicaid Only (Non-Money Payment).
> (m) Any aged, blind, or disabled individual who loses eligibility for Supplemental Security Income (SSI) benefits due to any increase in income other than a Social Security (Title II) cost-of-living increase beginning in July 1977, but who would be eligible for SSI if cost of living adjustments received since their SSI termination were disregarded. (Commonly known as the Pickle Amendment.)

The Petitioners' argue that the three requirements of the Tennessee regulation for Medicaid eligibility under the Pickle Amendment differ from the federal counterpart. First, under 1240-03-2-.02(2)(m), a person must be "aged, blind or disabled." Second, the individual must have received SSI and then lost SSI due to an "increase in income other than a Social Security (Title II) cost-of-living increase" after July 1997. Third, the applicant must show that they would be eligible for SSI if the COLAs to OASDI benefits are disregarded. The difference between the text of the Tennessee regulation and the federal one (42 C.F.R.

9

435.135(a)(1)) is that the latter requires that the aged, blind, or disabled individual currently be "receiving OASDI" benefits. This language appears in the federal regulation, *supra* at 4, but is absent from Tennessee's version of the Pickle Amendment in Tenn. Comp. R. & Regs. 1240-3-2-.02(2)(m).

The significance in this case of the difference in text between the regulations is that the Petitioners argue that while receipt of OASDI benefits may be required under the federal regulation to qualify as the "eligible" spouse for computing household income, receipt of OASDI benefits is not explicitly required under Tennessee's version of the Pickle Amendment. Thus, when the Petitioners' assertion that the three requirements for Medicaid under the Tennessee regulation version of the Pickle Amendment are filtered through the income formula of 20 C.F.R. 416.1163, the result is that Mrs. Earl, even though she does not receive OASDI, can be considered the eligible spouse under Tennessee's version of the Pickle Amendment. From the starting point of Mrs. Earl as the eligible spouse, her income is $0. The next step looks to Mr. Earl's countable income of $884.00. That income is greater than the $337.00 deeming limit, such that Mr. Earl's $884.00 is deemed to Mrs. Earl. That deeming puts them in the category of a couple, and the couple benefit rate with a household limit of $1,011.00 applies. The outcome is that the Petitioners' $884.00 income is less than the $1,011.00 couple benefit rate so that the Petitioners quality for the Pickle Amendment/ Medicaid eligibility.

10

DHS' position is that the absence in the Tennessee regulation of the explicit requirement of receipt of OASDI benefits is nevertheless a necessary element in Pickle evaluations in Tennessee as reflected by the Rules clarification in the Tennessee TennCare Medicaid and TennCare Standard Policy Manual:

<u>Pickle Cases</u>

Individuals who lose SSI eligibility for some reason other than a Social Security cost-of-living adjustment but would be eligible for SSI if the COLAs received since their SSI termination were disregarded may continue to receive TennCare Medicaid. The individual must make an application for TennCare Medicaid benefits under this provisions.

*Tennessee TennCare Medicaid and TennCare Standard Policy Manual*, page 347. Use of the word "Individuals" above, DHS argues, is consistent with the federal requirement of receipt of OASDI. The Petitioners' rejoinder is that the State's Policy Manual is not law. It can not override or fill in a gap of the Tennessee regulation 1240-03-2-.02(2)(m) which does not state the explicit requirement of receipt of OASDI benefits.

In this conflict of construction of regulations, the Court concludes that DHS prevails. As quoted above, TENN. COMP. R. & REGS. 1240-03-2-.02(2)(m) does not reproduce the Pickle Amendment provisions verbatim, but the Tennessee regulation does reference them with the statement "(Commonly known as the Pickle Amendment.)." This reference to the Pickle Amendment, the Court concludes, incorporates by reference the explicit terms of the

11

federal Pickle Amendment, including its requirement that eligibility depends upon receipt of OASDI benefits.

Once that requirement is explicitly read into and incorporated by reference into the Tennessee regulation, Mrs. Earl is not the eligible spouse for application of 20 C.F.R. 416.1163, and under subpart (3)(d)(1) the individual benefit rate must be used. The result is that the Petitioners do not qualify for Medicaid. Accordingly, DHS was correct in its decision below and that decision is affirmed.

Lastly there is the Petitioners' claim to recover attorneys' fees, citing to *Wimley v. Rudolph*, 931 S.W.2d 516 (Tenn. 1996). That claim is moot in light of the Court affirming DHS' decision. For completeness, though, the Court's analysis of the attorneys' fee claim, had the Petitioners prevailed, is that they still would not be entitled to recover their fees under sections 1983 and 1988.

Even if DHS had misconstrued the applicable law, such does not state a claim of denial of due process. The Petitioners were provided appropriate process to contest DHS's construction of the law and, therefore, were not deprived of their federal rights. Thus, if Petitioners had prevailed on their construction of the law, nevertheless there are insufficient grounds for recovery of attorneys fees.

12

Concluding that DHS correctly applied the individual benefit rate, the Court dismisses the Petition for Review with prejudice. Court costs are taxed to the Petitioners.

It is so ORDERED.

_____
ELLEN HOBBS LYLE
CHANCELLOR

cc: Lenny Croce
Ingrid Klose
Nancy McLean

RULE 58 CERTIFICATION
A Copy of this order has been served by U. S. Mail upon all parties or their counsel named above.

_____ Date _____
Deputy Clerk and Master
Chancery Court

13